BLAIR et al v. McGUIRE.

(Court of Civil Appeals of Texas. Galveston. April 11, 1912.)

BOUNDARIES (§ 3*)—SURVEYS—FIELD NOTES —REPORT AND DECREE—PARTITION.

The calls in the field notes of the surveyor, employed by commissioners of partition, for identification of corners by trees, being omitted in the commissioners' report, and the only calls therein, and in the decree and deeds pursuant thereto, being those of the surveyor, for the northeast corner of a league as the starting point, and courses and distances therefrom, the parties thereto and to a subsequent partition suit, making no reference to the survey, are not, in the absence of agreement or estoppel, bound by a boundary which such identification calls, erroneously placing said northeast corner, would make.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 3–41; Dec. Dig. § 3.*]

Error from District Court, Liberty County.

Action by J. E. McGuire against F. M. Blair and others. Judgment for plaintiff. Defendants bring error. Reversed and remanded.

J. F. Dabney, of Liberty, for plaintiffs in error. H. E. Marshall, of Liberty, for defendant in error.

REESE, J. As originally instituted, this is an action in trespass to try title brought by J. E. McGuire against F. M. Blair and others to recover a tract of land out of the Reason Green league in Liberty county. The defendants each disclaimed title as to all of the land sued for except a specific portion claimed, described by metes and bounds, as to which they pleaded not guilty. The only question in the case is one of boundary. The case was tried with a jury. The court instructed a verdict for plaintiff. Verdict and judgment accordingly. A motion for a new trial by defendants having been overruled, they prosecute this writ of error. The parties will be referred to as appellants and appellee.

The land in controversy is a part of a large body composed of several smaller tracts at one time belonging to W. F. Blair and his brother, John Blair. Of these several smaller tracts one lay in the Richard Green league, which joins the Reason Green league on the north; that is, the southeast corner of the Richard Green and the northeast corner of the Reason Green on the Trinity river are the same, but, on account of a difference in the variation of these lines running west of one degree, they diverge from each other slightly after leaving the river. The other tracts lay in the Reason Green league. The two Blairs acquired

their titles by deeds to them jointly. The tract in the Richard Green began at the southeast corner of the survey, and ran up the river, and thence west. They also acquired title to a tract described as the E. ½ of the S. ½ of the Reason Green. The other tracts in this body of land lay or were supposed to lay in the N. ½ of the Reason Green, and the title comes to them as follows: In 1898 suit for partition of the N. ½ of the Reason Green was filed by some of the joint owners. This suit was styled Douglass v. Reagan. In making the partition by decree in this case, upon the report of commissioners of partition, there was allotted to Minnie Nolan lot 1, described to begin at the northeast corner of the Reason Green, thence running west, with the Reason Green line, south, east back to the river and up the river to the beginning, containing 162 acres. To Lillie Hardin was allotted lot 2, beginning at the southeast corner of lot 1 and running west, south, east, to the river, and up the river to beginning, containing the same quantity. To Douglass and Jackson was allotted lot 3, containing 162 acres lying west of lots 1 and 2, and calling to begin at the northwest corner of lot 1; that is, in the north line of the league. To W. F. Hardin was allotted lot 4, beginning at the northwest corner of lot 3, and lying west of lot 3. Lot 5 allotted to Reagan called to begin at the northwest corner of the Reason Green and ran thence east, and lot 6, allotted to Levy, began at the southwest corner of lot 5 and lay south of it. There were no calls in any of the tracts for the south line of the north half of the league or reference thereto.

It will be seen that, as described in the partition decree, the north line of the four tracts, 1, 3, 4, and 5, was the north line of the Reason Green league, being a continuous line beginning with the northeast corner of lot 1 on the river, which was the northeast corner of the league, and running thence to the northwest corner of lot 5. The only calls in the field notes of the several surveys are courses and distances from their beginnings, except the call for the beginning corner of lot 1 as the northeast corner of the league, of the beginning corner of lot 5 as the northwest corner of the league, the call for the north line of the league as the north line of these lots and the river calls in lots 1 and 2. No objects of any kind are called for at any of the corners or along the lines.

Soon after this partition was made, W. F. and John Blair acquired, by conveyances from the several allottees, the title to lots 1, 2, and 3. The several lots are described as in the partition decree. John Blair having died, in a partition suit between his heirs and W. F. Blair of the body of land referred to, consisting, as aforesaid, of the tract in the Richard Green league, the three tracts in the N. ½ of the Reason Green and the tract described as the E. ½ of the S. ½

(or S. E. quarter) of the Reason Green, division was made as follows: There were allotted to W. F. Blair a tract of 897 acres, being all of the 1,107 acres, the southeast quarter of the league, except 50 acres that had been sold out, and 160 acres that was allotted to the heirs of John Blair, as hereinafter set out. In the allotment to W. F. Blair this land is described as the E. ½ of the S. ½ of the Reason Green league, without other description (describing the 50 acres and the 160 acres aforesaid, as excluded from the 1,107). To the heirs of John Blair the 400 acres in the southeast corner of the Richard Green league, the Douglass & Jackson, the Minnie Nolan, and the Lillie Hardin tracts (that is, lots 1, 2, and 3 of the Douglass v. Reagan partition) in the N. ½ of the league, describing each tract as it is described in the partition decree; also a tract of 160 acres out of the S. E. ¼ (or the E. ½ of the S. ½) of the Reason Green, described as follows: "Beginning on the half league line of said Reason Green survey on the bank of Trinity river, it being the N. E. corner of the 1,107-acre tract above described. Thence west with said half league line a sufficient distance that a line run thence south one quarter of a mile, thence east back to the Trinity river, and thence up the river to the place of beginning, will include 160 acres of land." After the commissioners of partition were appointed in Douglass v. Reagan to partition the N. ½ of the league, they employed R. C. Eubanks to survey the different tracts. In doing this he adopted as the north line of the league a line beginning on the west bank of the Trinity river at the mouth of Mud bayou, and running thence due west, which was the proper course for that line. He then surveyed lots 1, 2, 3, and 4 with reference to this corner and line. He did not actually survey lots 5 and 6 until after the decree. In surveying lots 1, 2, 3, and 4 he located the south line of the N. ½, being the south lines of these several lots, at about the proper distance from such north line as located by him for a line dividing the league into two equal halves. He marked the corners of these lots, both on the north and south lines, with marked corners, and bearing trees called for in the field notes returned by him to the commissioners, but for some reason in making their report and describing the lots these calls for identity were omitted, and nothing descriptive of the boundaries given, except the calls for the beginning corner of lot 1 (which controls the location of all of the lots) as the northeast corner of the league and course and distance therefrom. The same descriptions were given in the decree.

So far, the facts stated are established by the undisputed evidence. The controversy here as to the ownership of the land in dispute arises over the true location of the division line between the lands allotted to

W. F. Blair and those allotted to the heirs of John Blair in the partition between them. Appellee, to whom W. F. Blair conveyed the land described in plaintiff's petition, claims that his north line and the north line of the 160 acres allotted to the heirs of John Blair out of the southeast quarter of the league is the line surveyed by Eubanks as the division line of the league, according to which the judgment of the court would be correct. Appellants' contention is that the north line of the southeast quarter should be located according to the calls in the deed under which the parties take title, and that the real inquiry is as to the true location of the middle line of the league, dividing into two equal halves. It is the basis of appellee's contention, as we understand it, that, the partition having been made with reference to the Eubanks line as the dividing line between the north and south halves, that location must control, and this contention, as we understand it, was adopted by the court. There is no substantial conflict in the evidence as to the location on the ground of the Eubanks line, and that it is where appellee contends it is, and, if that line is absolutely to control under the facts stated, the peremptory instruction was correct, but if that line is not to control, without inquiry as to the location of the north line of the S. E. ¼ of the E. ½ of the league—that is, the true division line of the league into N. and S. halves—the peremptory instruction was not correct. The only corners of the two leagues that seem to be marked and identified with certainty are the northwest corner of the Richard Green and the southeast corner of the Reason Green, which is identical with the northeast corner of a survey of 200 acres in the name of W. F. Hardin. Both of these corners are definitely located and identified on the ground, and their location is well known and established. The evidence tends to show that, if the southeast corner of the Richard Green and the northeast corner of the Reason Green be established by running course and distance from either of these known corners before mentioned, this corner will be found about 341 varas south of the mouth of Mud bayou where Eubanks began his surveys as the northeast corner of the Reason Green, and that locating the middle line of the Reason Green from such location of the north and south lines such line will be about the same distance substantially south of the Eubanks line. If, under the facts of the case as developed by the evidence, appellants are not bound by the Eubanks middle line, on account of the partition referred to, as matter of law, then it seems to us that the case should have been submitted to the jury upon the issues, first, whether it was understood and agreed by the parties to the partition between W. F. Blair and the heirs of John Blair that the parties should accept and hold by the Eubanks line, and, if not,

where on the ground is the line dividing the league in north and south halves. We do not think that the evidence establishes conclusively that the appellants are bound by the Eubanks survey. It only appears that the land allotted to them in the N. ½ was described by the same field notes as in the partition in Douglass v. Reagan, but by those field notes there is nothing to tie to except the call for the northeast corner of the Reason Green. The evidence does not, we think, conclusively establish that the commissioners of partition did not take the field notes as they read, and intended to divide the land upon the theory that lots 1, 2, and 3 extended to the true north line of the league, and not to the line marked by Eubanks, and that the S. E. ¼ of the league should be laid out the same way. The fact that in making the partition in Douglass v. Reagan the commissioners discarded the marked and identifying objects called for by Eubanks might indicate that they chose rather to describe the lots with reference to the northeast corner and north line of the Reason Green, wherever it might be, and did not intend to be bound by Eubanks' location. They were directed to partition the N. ½ of the league, and their powers were limited to that. When the commissioners of partition in the case of Blair v. Blair came to do their work, they found the land in the N. ½ of the league described in the respective deeds to W. F. and John Blair, and back of that in the partition decree. In none of these instruments is there any reference to Eubanks' line, or a line run by Eubanks, but the different lots are described simply with reference to the north line and the northeast corner of the Reason Green league. There is nothing to indicate that they referred to any other line or corner than the true line and corner. The conclusion is more strongly supported that when they allotted to W. F. Blair the land in the E. ½ of the S. ½ of the league, without other description, they intended by this to describe a tract whose north line should be the line dividing the league into N. and S. halves. Nothing would disturb this conclusion except some understanding or agreement between the parties to that agreement that the line located by Eubanks as such middle line should be taken as the line between the N. and S. halves whether or not it was the correct line, or there was something in the conduct of appellants that would estop them to deny that the Eubanks line was the dividing line between them. We think it clear that the evidence at least does not conclusively prove the proposition, either of agreement or estoppel. The court erred in instructing a verdict for appellee, for which the judgment must be reversed and the cause remanded.

The court did not err in the admission of the evidence complained of by the first assignment of error with regard to the Douglass v. Reagan partition and other instru-

ments, nor in admitting the testimony as to the Eubanks line, subject, however, to what has been said as to the effect of this evidence. None of the other assignments of error should be sustained. The issues to be tried in our opinion are: Was there any agreement or understanding that the parties would abide or be bound by the Eubanks location of the dividing line, and, if so, where is it located? If not, where is. the true location of the dividing line between the N. and S. halves of the league?

For the errors indicated, the judgment is reversed and the cause remanded.

Reversed and remanded.